Matter of Khatari v Metro Mgt. & Dev. Inc. (2025 NY Slip Op 50443(U))

[*1]

Matter of Khatari v Metro Mgt. & Dev., Inc.

2025 NY Slip Op 50443(U)

Decided on April 6, 2025

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected in part through April 10, 2025; it will not be published in the printed Official Reports.

Decided on April 6, 2025
Supreme Court, Kings County

In the Matter of the Application of Alawi Khatari, SABA KHATARI, Petitioners,

against
Metro Management & Development, Inc., DAVID BARON, NICOLE DUNCAN, VERONICA JOSEPH, 
 ST. JAMES TOWERS, INC., NOREEN HOSIER, Respondents

Index No. 698/2024

Alawi Khatari & Saba Khatari, petitioners pro se.
Abrams Garfinkel Margolis Bergson, LLP, New York City (Alexander Rabinowitz of counsel), for respondents.

Aaron D. Maslow, J.

Papers used on this special proceeding:
Submitted by Petitioner: order to show cause, verified petition, Part 130 certification, verification, NYS Division of Human Rights determination, RJI.
Submitted by Respondents: notice of cross-motion, affirmation in opposition to motion & in support of cross-motion, exhibits A — M, affirmation of service, memorandum of law.
Upon the foregoing papers, having heard oral argument, and due deliberation having been had, the petition in this special proceeding is determined as follows.
Issue
In this Article 78 proceeding, Petitioners seek review of the June 28, 2024 Determination and Order after Investigation ("Determination") of the New York State Division of Human Rights ("DHR") determining that there is no probable cause to believe that Respondents engaged [*2]in an unlawful discriminatory practice in assigning a Mitchell-Lama apartment to an applicant that had priority over Petitioners pursuant to the New York City Department of Housing Preservation & Development's ("HPD") rules governing Mitchell-Lama apartments.

 Background
The co-op at issue is an HPD-supervised Mitchell-Lama middle income residential cooperative located in Brooklyn, New York (the "Building"). Respondent Metro Management & Development, Inc. ("Respondent Management") is the managing agent of the co-op, and Respondent David Baron ("Respondent Baron") is the President of Management. Respondent Nicole Duncan ("Respondent Duncan") and Veronica Joseph ("Respondent Joseph") are property managers of the Building.
In or about 2018, Petitioners applied to the Building's Mitchell-Lama lottery program for the purchase of a three-bedroom unit in the co-op. On September 20, 2018, the co-op sent a letter to Petitioners informing them that they were selected in the lottery and were assigned lottery number 41. Petitioners were advised that the co-op is a Mitchell-Lama development supervised by HPD, and that all HPD guidelines for income, occupancy, and residency are strictly adhered to. The co-op's September 20, 2018 letter also informed Petitioners that the occupancy standards for a three-bedroom apartment are as follows: No fewer than (a) five persons, (b) parent(s) or guardian(s) with two children of opposite sex, (c) a household of three adults with one child where at least one adult is the parent or guardian of such child, or (d) a household of one parent or guardian and his or her three children. Thereafter, on or about September 27, 2018, Petitioners applied to the co-op on behalf of themselves, their three sons, and their daughter.
The Mitchell-Lama program maintains that internal transfer applicants, i.e., individuals already occupying Program units, have priority over external applicants for available apartments. On September 13, 2019, HPD amended the Mitchell-Lama Rules (Title 28, Chapter 3). Pursuant to the amended § 3-02(h)(15)(i), the following is stated [FN1]
:
(i) Occupancy priorities. The following occupancy priorities shall apply to all housing companies.
(1) First priority. Tenant/cooperators currently residing in a development whose household composition renders them eligible for a smaller apartment shall be given first priority for an internal transfer. Tenants/cooperators currently residing in a development whose household composition renders them eligible for a larger apartment shall be given first priority for the first three out of every four apartments that become available and the fourth such apartment that becomes available shall be set aside and offered to an applicant on the external waiting list in accordance with the provisions contained in paragraph (3) of this subdivision. . . The tenant/cooperator must meet the occupancy standards for the size apartment requested at the time that he or she places his or her name on the internal transfer list and must have been in residence for a period of no less than one year before he or she may request a transfer to a larger apartment.

 ***
(3) Third priority. Persons listed on the external waiting lists by apartment size in strict chronological order by date of receipt of application or order of selection by lottery, as applicable. Family members of a tenant/cooperator, whether or not members of the tenant/cooperator's household, shall not receive preferential treatment on the waiting lists.
HPD has construed this amended provision to mean that current residents will continue to have priority to move to a smaller unit, but that internal transfers to a larger size unit will have priority for three out of every four apartments. Accordingly, Mitchell-Lama developments are required to offer one out of every four (the fourth of four) available units to applicants on external lists, and only after three internal applicants have received their offer.
In 2022, Respondent Management sent multiple internal/external applicants letters advising them that the co-op had one three-bedroom apartment available, Apartment 17A ("Unit"). On or about December 16, 2022, Respondent Management determined that Petitioners were next on the external waiting list for an apartment, with the December 16, 2022 letter being accompanied by a list of required documents for admission, including school verification for students less than twenty-one years of age.[FN2]

On January 4, 2023, Petitioners met with Respondent Management for an applicant interview in which Petitioners were asked routine questions about their children — if their children were registered in school — and to provide school verification letters (these are questions that Respondent Management asks all applicants with children that will be living in the apartment). Respondent Management also provided a tour of Apartment 17A, the one available three-bedroom unit referenced in the December 16, 2022 letter.
On January 20, 2023, Respondents received an application from Ronnie L. Eggleston, the longtime owner of Apartment 21B at the Building, for an internal transfer to the Unit with his wife and his four children (three sons and one daughter). Eggleston and his family had been on the internal waiting list since August 9, 2016, and in accordance with the amendment to Section 3-02 (h) (15) (i) of the Mitchell-Lama Rules, Eggleston was given priority as an internal applicant over Petitioners who were external applicants. On March 1, 2023, Management sent Petitioners a letter.[FN3]

On or about May 2, 2023, Petitioners filed a complaint against Respondents with the DHR alleging that Respondents discriminated against Petitioners by denying them the opportunity to buy the Unit due to their national origin (Yemeni), religion (Muslim), and familial [*3]status (having children under the age of eighteen). On or about June 28, 2023, Respondents filed their answer and position statement in response to the DHR Complaint, demonstrating that another applicant with the same family makeup as Petitioners was given priority to purchase the Unit in accordance with the Mitchell-Lama Rules, Title 28, Chapter 3, Section 3-02 (h) (15) (i), which requires that internal transfer applicants, such as individuals already occupying Mitchell-Lama program units, seeking a larger size unit will have priority for three out of every four apartments. On or about June 28, 2024, the DHR issued its "Determination and Order After Investigation," determining that "there is NO PROBABLE CAUSE to believe that the respondents have engaged in or are engaging in the unlawful discriminatory practice complained of."[FN4]

Petitioners' Position
On or about August 26, 2024, Petitioners filed the instant petition containing a vague and conclusory allegation of discrimination. Petitioners allege that they went through an application and an interview process to purchase the Unit but were ultimately informed that the Unit was "assigned to someone else." The basis Petitioners provide for believing that they were discriminated against is that "other management offices told me the process I went through means the Apartment is ours." However, Petitioners do concede that they previously filed the DHR Complaint and that the DHR determined that Petitioners were not discriminated against. The relief Petitioners seek in the petition is for this Court to "investigate all other management office to see that I was denied apartment, was discriminated against. I need justice and my apartment."

 Respondents' Position
Respondents oppose the petition and cross-moved to dismiss it pursuant to CPLR 3211 (a) (1), (7), and (10), and CPLR7804 (f). They claim that the petition should be dismissed for failure to join the DHR, a necessary party. Pursuant to CPLR §3211 (a) (10), a party may move to dismiss on the ground that "the court should not proceed in the absence of a person who should be a party." Here, the petition should be dismissed for Petitioners' failure to join the DHR as a respondent in this action. "A proceeding to review a determination of the DHR 'shall be commenced by the filing of a notice of petition and petition naming as respondents the DHR and all other parties appearing in the proceeding before the DHR'" (22 NYCRR 202.57 [a]). Thus, the DHR, which issued the determination alleged by Petitioner in this CPLR Article 78 [*4]proceeding, is a necessary party, and the failure to timely join it warrants dismissal of the petition (Matter of Pierre v F.J.C. Sec. Servs., Inc., 172 AD3d 1380, 1381 [2d Dept 2019]). As a result, Respondents maintain that here, the petition should be dismissed because Petitioners failed to join the DHR as a respondent, a necessary party pursuant to controlling law.

Conclusion
CPLR § 3211 (a) (7) permits a party to move for dismissal where the pleading fails to state a cause of action. "When considering a motion to dismiss pursuant to CPLR § 3211 (a) (7), the court must accept the facts as alleged in the complaint as true and accord the plaintiff the benefit of every possible favorable inference and must determine whether the facts as alleged fit within any cognizable legal theory (Gomez-Jimenez v New York Law Sch., 103 AD3d 13, 16 [1st Dept 2012]). "However, the allegations in the pleading cannot be vague and conclusory" as they are in this petition (Phillips v Trommel Const., 101 AD3d 1097, 1098 [2d Dept 2012]). "Liberal construction cannot be used as a substitute for matters of substance" and "the court cannot strain to give meaning to a pleading which completely fails to state any coherent or comprehensible factual allegations" (Jackson v Bank of NY Mellon, 33 Misc 3d 1208[A], 2011 NY Slip Op 51811[U], *3, 5 [Sup Ct, Kings County 2011] [internal quotation marks omitted]).
CPLR § 3211 (a) (1) permits a party to move for dismissal of a cause of action based on a defense founded upon documentary evidence. "Although on a motion to dismiss . . . the facts pleaded are presumed to be true and are accorded every favorable inference, where, as here, the allegations consist of . . . factual claims either inherently incredible or flatly contradicted by documentary evidence, they are not entitled to such consideration" (Beattie v Brown & Wood, 243 AD2d 395 [1st Dept 1997]). Accordingly, "[w]here evidentiary material is submitted and considered on a motion to dismiss a complaint . . . the question becomes whether the plaintiff has a cause of action, not where the plaintiff has stated one" (Young v Campbell, 87 AD3d 692, 693 [2d Dept 2011]). Under these standards, "the court may grant dismissal when documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law" (Beal Sav. Bank v Sommer, 8 NY3d 318, 324 [2007]).
New York courts have long held that a petition in an Article 78 proceeding must comply with the rules for a complaint in a plenary action, which generally requires that statements be sufficiently particular to give the court and the parties notice of the material elements of each cause of action or defense (Matter of Oliver v Donovan, 32 AD2d 1036 [2d Dept 1969]; see also Jahn v Patterson, 23 AD2d 688 [2d Dept 1965] [dismissing Article 78 petition where the facts alleged in the petition, even if deemed to be true, did not establish petitioner's right to the relief requested]). Measured against these standards, the petition herein should be dismissed.
Moreover, Petitioners fail to allege facts that are sufficient to disturb the determination. "Where, as here, the [DHR] renders a determination of no probable cause without holding a hearing, the appropriate standard of review is whether the probable cause determination was arbitrary and capricious or lacked a rational basis" (Matter of Gordon v New York State Div. of Human Rights, 126 AD3d 697, 698 [2d Dept 2015]). An action is arbitrary and capricious, or an abuse of discretion, when the action is taken "without sound basis in reason and . . . without regard of the facts" (Matter of Pell v Board of Educ., 34 NY2d 222, 231 [1974]). "The court's function is completed on finding that a rational basis supports the administrative determination" (Matter of Rosario v New York State Div. of Human Rights, 21 Misc 3d 1108[A], 2008 NY Slip Op. 52010[U], *3 (Sup Ct, NY County 2008]), citing Howard v Wyman, 28 NY2d 434 [1971]). [*5]"Where the administrative interpretation is founded on a rational basis, that interpretation should be affirmed even if the court might have come to a different conclusion" (id.). "On review of an agency decision under Article 78, the courts may not second guess the agency's choice, which can be annulled only if arbitrary, capricious, or unsupported by substantial evidence (id. at *4).
Here, the DHR clearly explained its Determination and related the evidence and reasoning upon which it was based, and Petitioners have not identified a single aspect of the Determination that was erroneous, contrary to the facts and the evidence, or irrational. Moreover, Petitioners have not alleged that the Determination was arbitrary or capricious, let alone identified how the Determination was arbitrary and capricious. Apart from the vague and conclusory allegation that Petitioners believe that they were discriminated against, Petitioners have completely failed to allege any facts that would give rise to the inference that the DHR's Determination was arbitrary and capricious or lacked a rational basis. The documentary evidence supports Respondents' position. Pursuant to the applicable Mitchell-Lama rules, priority for the subject apartment was properly given to an internal applicant.
Moreover, Petitioners failed to name the DHR as a Respondent, and that alone warrants dismissal of Petitioners' petition (see Windy Ridge Farm v Assessor of Town of Shandaken, 11 NY3d 725 [2008]).
Accordingly, the following is hereby ORDERED: Petitioners' petition (MS #1) is DENIED and Respondents' cross-motion (MS #2) to dismiss is GRANTED. The within special proceeding is dismissed with prejudice and Respondents shall have judgment in their favor.

Footnotes

Footnote 1:See https://www.nyc.gov/assets/hpd/downloads/pdfs/services/mitchell-lama-rules.pdf. 

Footnote 2:All applicants with children to a Mitchell-Lama co-op are required to provide, among other things, school verification for any full-time student over the age of eighteen, as well as verification of the child's school attendance. 

Footnote 3:The letter stated the following: "Thank you for completing your recent application process to St. James Towers, Inc. At this time we are unable to assign a unit. You are number 1 for the next available unit. Management will contact you when the next unit is available. If you are no longer interested in an apartment at St. James Towers, please submit a written request (to the address above) for your application refund of $150.00."

Footnote 4:The DHR's finding in this matter was the following: "A no probable cause determination is warranted because the investigation does not show that Respondents engaged in discrimination based on Complainants' familial status, national origin, or creed. Respondents established that an internal transfer had preference over Complainants at the subject property in this instance. Complainants remained next on the waiting list as external applicants. The Division interviewed a resident who had been on the waiting list for a larger apartment since 1999. They were moved from a two-bedroom apartment to a three-bedroom apartment. Their family composition consists of 6 people, 2 adults and 4 children. They identify as African American. The transfer followed the policies of the property and HPD."